# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS WILLIAMS, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Case No.: 5:20-CV-00479-RDP |
| | } | |
| ANDREW SAUL, Commissioner of | } | |
| Social Security, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OF DECISION

Plaintiff Nicholas Williams brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability and disability insurance benefits ("DIB"). *See also*, 42 U.S.C. 405(g). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.     Proceedings Below

Plaintiff filed his application for disability and DIB on May 20, 2016, alleging disability beginning September 1, 2014. (R. 138). Plaintiff's application was denied by the Social Security Administration on August 17, 2016. (*Id.*).  Thereafter, Plaintiff filed a written request for hearing on September 16, 2016. (R. 156-57). Plaintiff's request was granted and a hearing was held on December 13, 2018, in Huntsville, AL, before Administrative Law Judge Patrick R. Digby ("ALJ"), with testimony presented by both Plaintiff and Patsy V. Bramlett, a vocational expert. (R. 34-84). In his decision, dated March 8, 2019, the ALJ determined that Plaintiff had not been

under a disability, within the meaning of Sections 216(i) and 223(d) of the Act, from September 1, 2014 through the date of the decision. (R. 15-28). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on February 13, 2020, the ALJ's decision became the final decision of the Commissioner, and thereafter a proper subject of this court's appellate review. (R. 1).

Plaintiff was forty-five years old at the time of the hearing and had earned an Associate Degree in Electrical Engineering Technology. Plaintiff previously served as a repairman in the United States Army from March 26, 1992 to May 30, 2014, and was honorably discharged as a staff sergeant. (R. 361-62). Plaintiff alleges disability primarily due to post-traumatic stress disorder ("PTSD") related to his enlistment in the military. (R. 40). Plaintiff was first diagnosed with PTSD on October 30, 2008 at D.D. Eisenhower AMC in Fort Gordon, Georgia. (R. 372-73).[1] Plaintiff testified that over the course of six deployments, he suffered traumatic injuries, which led him to receive counseling throughout the last seven years of his enlistment. (R. 39-40, 54-55, 57). Plaintiff testified that even though he continued to receive treatment while in the military, he ultimately resigned because of difficulty in his "ability to deal with the other people's personality." (R. 56-57).

Plaintiff was given a psychiatric evaluation by Dr. Paul G. Fredette at the Birmingham Veteran Affairs Medical Center ("VAMC") on December 9, 2014, who noted that Plaintiff found driving very stressful and described hypervigilance, anxiety, and avoiding crowds. (R. 888). Dr. Fredette further noted that Plaintiff seemed alert and oriented, had adequate grooming, was well developed, well nourished, cooperative, and exhibited normal gait and station. (R. 889). Dr.

---

[1] Medical records provided by the Department of Defense only go as far back as September 10, 2013, but Plaintiff was listed as having been diagnosed with PTSD in one occurrence dated October 30, 2008.

Fredette recommended that Plaintiff follow-up in three months, but Plaintiff did not reappear at the VAMC until May 2, 2016. (R. 891, 870). Plaintiff testified that he began receiving treatment at the VA in 2014, but then ceased going in 2016. (R. 49-50).

Following his discharge from the military, Plaintiff entered the private workforce. He worked in a library for four months. (R. 39-40). He testified that he resigned from the library because of difficulties related to PTSD and difficulty in his "ability to deal with the other people's personalities." (*Id.*). He then worked in a gymnasium for several years, through a temp agency, and lastly with a door manufacturing company. (R. 49, 56).

Plaintiff claims he suffers from sleep apnea, back pain, a history of knee arthroscopy, anxiety, cervical degenerative disc disease with spondylosis and radiculopathy, degenerative joint disease of the shoulder, and bilateral ulnar and cubital nerve syndrome. (R. 17-18).

On July 29, 2015, Plaintiff was examined by Dr. Eric Roth at the Spine and Neuro Center in Huntsville. (R. 918-19). Dr. Roth noted Plaintiff did not exhibit symptoms of nervousness or depression. On May 2, 2016, Plaintiff was referred to Dr. Fredette by Amy Burks, a social worker at the Birmingham VAMC, for a same-day walk-in appointment regarding concerns about anger and road rage. (R. 870, 874). Plaintiff had ceased taking his medication (Citalopram and Prazosin) due to concerns about their side effects, but still exercised almost every day and was characterized as being alert and oriented. (*Id.*). Plaintiff's stressors were listed as adjusting to civilian life, looking for work, and raising special needs children. (R. 870-71). That same day, LPN Markeita L. Graham at the Birmingham VAMC reviewed and reconciled Plaintiff's medications, thereafter being prescribed Atorvastatin, Cyclobenzaprine, Hydrocodone-Acetaminophen, and Rizatriptan Benzoate, in response to his previous hesitations regarding the side effects of Citalopram and

Prazosin. (R. 862-63). On June 13, 2016, Dr. Jason Banks at the Spine and Neuro Center noted that Plaintiff denied symptoms of depression, nervousness, or psychiatric illness. (R. 987).

On July 17, 2018, Latoia Linebarger, a social worker at the Huntsville Vet Center (Readjustment Counseling), noted in a letter that Plaintiff had begun receiving counseling for his PTSD symptoms starting in September 2015 and was seen bi-weekly for individual counseling sessions. (R. 1553). Plaintiff was seen by Dr. Agha Quaratulain on September 7, 2018 and October 2, 2018 for his PTSD symptoms and trouble sleeping. (R. 1569-77). Dr. Quaratulain noted in an October 2, 2018 follow-up that Plaintiff was experiencing better sleep due to Trazodone, he agreed to increase Prazosin, and he was marked with the current mental status of "All Normal." (R. 1575). Plaintiff testified that he also takes Wellbutrin for mood and behavior, which works "a little." (R. 53).

Plaintiff was diagnosed at D.D. Eisenhower AMC in Fort Gordon, Georgia, with obstructive sleep apnea accompanied by an onset date of May 17, 2012. (R. 375). Plaintiff testified the sole treatment he receives for his sleep apnea is a CPAP. (R. 77).

Plaintiff's history of knee arthroscopy begins with a diagnosis of "pain in joint, lower leg," dated July 5, 2006 at Madigan AMC-Fort Lewis and October 20, 2006 at Landstuhl RMC. (R. 373). Plaintiff was again diagnosed with "pain in joint, lower leg" on July 30, 2013 at Martin ACH, Fort Benning, Georgia. (R. 375).

Plaintiff has medical records from many treating and examining sources during his purported period of disability. Medical records indicate that Plaintiff suffers from bilateral ulnar and cubital nerve syndrome. (R. 596, 906, 1241). Plaintiff has a history of back and neck pain with associated numbness and tingling radiating into his upper and lower extremities. (R. 442, 483, 501, 546, 562, 592, 619, 897, 900, 912, 1622, 1631). Studies conducted on his upper extremities

4

indicate bilateral carpal tunnel and cubital tunnel deficiencies with possible cervical radiculopathies. (R. 596, 906). Examinations on May 30, 2018 and June 28, 2018 note that Plaintiff exhibited tenderness and decreased range of motion in his bilateral elbows accompanied by decreased sensation in hands, fingers, and forearm. (R. 1625, 1633).

On June 14, 2016, Plaintiff visited Dr. Luther G. Stanfield, D.O.[2] at AHC Fox-Redstone Arsenal in a follow-up after an MRI of his left knee, where Plaintiff was noted as exhibiting an abnormal gait. (R. 433-34). Dr. Stanfield also noted that, on June 10, 2016, Plaintiff had reported decreased sensation in upper and lower extremities with pain on range of motion testing in regard to his back and neck. (R. 433-34, 442, 444).

On May 30, 2016 and June 28, 2016, Plaintiff was seen by Dr. Norman McCoomer at Pain & Rehabilitation Consultants, where he was again noted to have an abnormal gait and limited range of motion in his upper and lower extremities. (R. 1624-25, 1632-33). Plaintiff also has a history of shoulder pain related to shoulder tendonitis and suspected rotator cuff tear. After an examination accompanied by an MRI, Dr. Dale Culpepper recommended that Plaintiff undergo surgery. (R. 1555-57).

Plaintiff also has a history of treatment for degenerative joint disease of the knee, with surgery performed by Dr. Culpepper on January 3, 2017. (R. 997-1002, 1605-07). An MRI on July 6, 2018 indicated Plaintiff had mild chondromalacia in his right knee. (R. 1620). Previously, on

---

[2] A Doctor of Osteopathic Medicine (D.O.) is a fully trained and licensed doctor who has attended and graduated from a U.S. osteopathic medical school. A Doctor of Medicine (M.D.) has attended and graduated from a conventional medical school. The major difference between osteopathic and allopathic doctors is that some osteopathic doctors provide manual medicine therapies, such as spinal manipulation or massage therapy, as part of their treatment. After medical school, both M.D.s and D.O.s must complete residency training in their chosen specialties. They must also pass the same licensing examination before they can treat people and prescribe medications. https://www.mayoclinic.org/healthy-lifestyle/consumer-health/expert-answers/osteopathic-medicine/faq-20058168,

January 26, 2016, Plaintiff was noted by Dr. John Walker to be doing well, that he was going to the gym daily, and using his arms in his workouts. (R. 1040-41). Despite Plaintiff's impairments and some abnormal findings on examinations, he was repeatedly released "w/o Limitations." (R. 461, 469, 471, 481, 488, 496, 499, 503, 562, 569, 585, 591, 597, 600, 602, 608, 615, 625, 627, 659, 807, 1121, 1144, 1151, 1161, 1204, 1597, 1600, 1608).

Non-examining evidence from Dr. Samuel Williams found that Plaintiff's medically determinable impairments were primarily Disorders of Back-Discogenic and Degenerative ("DDD") and secondarily, Anxiety Disorders. (R. 143). Additionally, Dr. Williams noted that Plaintiff's alleged mental conditions could not be determined, as there was insufficient evidence and a lack of completed paperwork available. (*Id.*).

Plaintiff records also includes a VA disability determination as evidence of his disability and the severity of his alleged impairments. (R. 77). In a July 10, 2018 ratings decision by the VA, Plaintiff was found to have a combined disability rating of 100% with an effective date of September 1, 2014. (R. 1540-49). This determination was achieved after including several military service-connected medical conditions such as right knee degenerative joint disorder (10%), migraine headache (30%), left lower extremity radiculopathy (10%), obstructive sleep apnea (50%), impulse control/PTSD (50%), lumbar degenerative disc disease (10%), right carpal and cubital and tunnel syndrome (20%), left knee degenerative joint disease post arthroscopic surgery (10%), and right lower extremity radiculopathy (10%). (*Id.*).

## II.    ALJ Decision

Disability under the Act is determined by utilizing a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both

"substantial" and "gainful." 20 C.F.R. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.*

If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, as well as his age, education, and work experience. 20 C.F.R. § 404.1520(g). Here,

the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ concluded that Plaintiff was not engaged in substantial gainful activity since September 1, 2014 and had the following severe impairments: sleep apnea, back pain, history of knee arthroscopy, and anxiety. (R. 17). These findings satisfy steps one and two of the inquiry. Further, the ALJ found Plaintiff to have the following non-severe impairments: obesity, cervical spondylosis with left radiculopathy, and history of carpal tunnel syndrome. (R. 18). Additionally, the ALJ determined that "any other condition, not specifically mentioned in this decision" is non-severe for the purposes of step two.[3]

After review, the ALJ found that Plaintiff did not have an impairment or combination of impairments which meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart B, Appendix 1 ("Listings"). In particular, Plaintiff did not meet Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.09 (chronic or pulmonale sleep-related breathing disorders), or 12.06 (anxiety and obsessive-compulsive disorders). (R. 18-21). While the ALJ notes that these impairments do exist, the limitations that they impose on Plaintiff do not rise to the level of "severe." (*Id.*). In the absence of an Adult Function Report, the ALJ based this decision on available treatment records and Plaintiff's own testimony. (R. 19).

In regard to Listing 12.06, Plaintiff's daily activities were not found to rise to a level that implies an inability to function independently, appropriately or effectively, and on a sustained

---

[3] This would include Plaintiff's cervical degenerative disc disease with spondylosis and radiculopathy, degenerative joint disease of the shoulder, bilateral ulnar and cubital nerve syndrome, and PTSD.

basis, which therefore fails to satisfy "paragraph B." (*Id.*). Plaintiff was found to have moderate limitation in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing himself. (R. 19-20). Thus, the ALJ found that the evidence fails to meet "paragraph C" criteria, which in conjunction with "paragraph A" would establish a severe impairment. (R. 20). In addition, the ALJ noted that Plaintiff had been diagnosed with obesity, but Plaintiff does not allege that his obesity results in disability nor does the evidence suggest that this was a disabling impairment. (R. 20-21).

At step four, in determining Plaintiff's RFC, the ALJ found Plaintiff is able to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b), with the following exceptions: he can occasionally (1/3 or less of an eight-hour day) lift and/or carry, including upward pulling of twenty pounds and frequently (more than 1/3 to 2/3 of an eight-hour day) lift and/or carry, including upward pulling of ten pounds; he can stand and/or walk, with normal breaks, for a total of six hours in an eight-hour workday; he can sit with normal breaks, for a total of six hours in an eight-hour workday; cannot work on ladders, ropes, or scaffolds, nor work at unprotected heights; he should do no commercial driving; no work around moving and/or dangerous machinery; he can occasionally stoop and crouch, but cannot crawl; and he should avoid concentrated exposure to extreme cold temperatures and jobs involving heavy vibrations. (R. 21). Further, due to his non-severe mental limitations, the ALJ found Plaintiff can understand, remember, and carry out simple instructions and tasks, and can concentrate and complete these simple tasks for two-hour periods across an eight-hour workday and five-day workweek with all customary work breaks. (*Id.*). Finally, the ALJ found Plaintiff should have his own workstation; he can have occasional contact with the general public, coworkers, and supervisors, but no direct

contact with the general public such as a cashier or in sales; he should not work in conjunction

with others; and any changes in his work environment should be infrequent. (*Id.*). Accordingly, in

light of these limitations, the ALJ determined Plaintiff is unable to perform any past relevant work,

but that there are jobs that exist in significant numbers in the national economy that Plaintiff can

perform. (R. 26-27).

## III.     Plaintiff's Argument for Reversal

Plaintiff argues that substantial evidence does not support the ALJ's decision and makes

two arguments in support of that assertion. First, he contends that the ALJ committed reversible

error by failing to find that a combination of his cervical degenerative disc disease with spondylosis

and radiculopathy, degenerative joint disease of his shoulder, bilateral ulnar and cubital nerve

syndrome, and PTSD to be severe impairments. (Pl.'s Br. 13-20). Second, Plaintiff asserts that the

ALJ failed to properly evaluate (1) the opinion evidence from Latoia Linebarger and (2) his 100%

VA disability determination. (Pl.'s Br. 20-24).   The court addresses these arguments below.

## IV.     Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's

decision is supported by substantial evidence or whether the correct legal standards were applied.

42 U.S.C. §§ 405(g), 1383(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

"Substantial evidence is less than a preponderance, but rather such relevant evidence as a

reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d

1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)

(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). It is something "more

than a mere scintilla." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). The Commissioner's

factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245

F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual

findings must be affirmed, even if the record preponderates against the Commissioner's findings.

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d

at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

## V.      Discussion

### a.      Substantial Evidence Supports the ALJ's Findings of Plaintiff's Non-Severe Impairments

Plaintiff first argues that the ALJ committed reversible error by not determining that his

impairments -- cervical degenerative disc disease with spondylosis radiculopathy, degenerative

joint disease of his shoulder, bilateral ulnar and cubital nerve syndrome, and PTSD -- were severe.

(Pl.'s Br. 13). Plaintiff contends that this omission at step two was not merely harmless, because

the ALJ failed to properly consider the alleged impairments in later steps of the analysis. (Pl.'s Br.

14). In particular, Plaintiff asserts that the ALJ failed to address his additional non-severe

orthopedic and upper extremity impairments, as well as his PTSD in the RFC analysis. (Pl.'s Br.

13). Additionally, Plaintiff alleges the ALJ failed to properly evaluate whether he met the

requirements of Listing 12.15 and that the ALJ's finding of other light work should have been

precluded due to Plaintiff's limitations. (*Id.*).

The Eleventh Circuit has held that "the finding of any severe impairment, whether or not

it qualifies as a disability and whether or not it results from a single severe impairment or a

combination of impairments that together qualify as severe, is enough to satisfy the requirement

of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). Once this criteria has been

met and the ALJ proceeds beyond step two, he must consider the claimant's entire medical

condition, including impairments determined to be non-severe. *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011). For the purposes of satisfying step two, the ALJ was merely required to credit Plaintiff with severe impairments. An ALJ does not err when, in determining a claimant's impairment (or lack thereof) to be non-severe and the omission is harmless, the record demonstrates the ALJ considered and discussed them at subsequent steps in the analysis. *Freeman v. Comm'r of Soc. Sec.*, 593 F. App'x 911, 914-15 (11th Cir. Nov. 25, 2014). *See also Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013); *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014); *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011).

Plaintiff argues that the ALJ's finding that his neck, shoulder, and upper extremity conditions were non-severe was "more than harmless" error. Specifically, he contends that the alleged failure is because the ALJ did not "further discuss the effects of these impairment[s] in later steps of the sequential evaluation or in formulating the RFC determination." (Pl.'s Br. 18). In support of this argument, Plaintiff alleges that the ALJ did not include in his RFC determination "any limitations in use of upper extremities for reaching, handling, grasping, or fingering." (*Id.*). Evidence of these limitations stem from Plaintiff's citation to examinations on April 27, 2016 and June 10, 2016 showing decreased grip strength. (R. 444, 461; Pl.'s Br. 17). However, the evidence Plaintiff cites does not compel a finding of greater physical limitations than those stated in the ALJ's RFC finding. (Def.'s Mem. 12). The ALJ stated in reviewing the record that he paid particular attention to the duration and frequency of Plaintiff's medical conditions. (R. 18). Other examinations, both prior and subsequent to the April 27, 2016 and June 10, 2016 examinations, documented excellent grip strength or "equal grip strength." (R. 1041, 1476, 1484, 1625, 1633).

Plaintiff references several notes which document him as having cervical tenderness and limited range of motion, but Plaintiff has not shown how this evidence implies the need for greater limitations than the RFC finding or how it indicates a lack of substantial evidence supporting the ALJ's RFC finding. (Pl.'s Br. 17-18; R. 460-61, 1624-25, 1633). Imaging or nerve conduction studies similarly do not compel a different finding, as they do not translate to *functional* limitations. As the Eleventh Circuit noted in *McCruter v. Bowen*, 791 F.2d 1544 (11th Cir. 1986):

> [T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.

*Id.* at 1547. Plaintiff's medically ascertained disability cannot be viewed as severe simply because those indications may indicate less than normal or healthy functioning. To be sure, the record does not show that Plaintiff suffers from limitations to his bodily motions. Moreover, the effect upon his ability to work was not measurable to the point of being considered a severe disability.

Plaintiff next argues that the ALJ failed to address whether his PTSD is severe. (Pl.'s Br. 18). Plaintiff asserts that the ALJ failed to discuss whether Plaintiff satisfied the criteria for trauma and stressor-related disorders. (*Id.*). The ALJ found that Plaintiff had moderate limitations of psychological functioning including understanding, remembering or applying information, and interacting with others. (R. 19-20). According to Plaintiff, the ALJ "leaves out the fact that only three of [his children] are under the age of 18" and that he received auxiliary aid from his relatives. (Pl.'s Br. 19). This argument actually highlights a recurring problem in Plaintiff's arguments: he has not explained why the evidence relied upon by the ALJ is *not* substantial.

Plaintiff contends that the ALJ failed to properly analyze his PTSD due to a lack of consideration of his chronic symptoms specific to PTSD such as flashbacks, hypervigilance,

13

difficulty in managing mood, and avoidance behaviors. (Pl.'s Br. 19; 870, 880, 888, 1571, 1553, 1575-77, 1600). To the contrary, the ALJ identified evidence to support the determination that Plaintiff's symptoms from this condition were not as severe or limiting as alleged. (R. 22). Plaintiff reported in May 2016 that he was not taking prescribed medication, he denied having little interest or pleasure in doing things, and he denied that he was depressed or helpless. (R. 22, 865, 870). The ALJ similarly considered examinations from numerous medical experts that documented Plaintiff as "alert, oriented, well groomed, and well nourished" and that Plaintiff expressed "congruent mood and affect, normal speech, intact judgment and insight, and organized thoughts." (R. 22-23, 870, 889, 1571-72, 1575-76, 1596, 1606).

To further evaluate the severity and limiting effects of Plaintiff's PTSD and mental health symptoms, the ALJ also considered Plaintiff's daily activities in relation to these alleged effects and chronic symptoms. (R. 12). The Eleventh Circuit has held that in regard to evaluating step four of the analysis, "[t]he regulations do not… prevent the ALJ from considering daily activities." *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1529(c)(3)(i). Despite the alleged severity of the impairment, Plaintiff still had the ability to take care of his children, go shopping, and attend doctor's appointments in person. (R. 23, 43-48, 50, 54, 73-76, 870, 875, 1605). The record evidence about these activities undercuts his argument that he was incapable of being around people. Plaintiff argues that substantial evidence does not support a finding that he does not meet the Listing 12.15 requirement of Part A. But, his daily activities (as well as documentation on his outlook, demeanor, and appearance) indicate otherwise. The record does not show *marked* limitations in his ability to interact with others and to adapt or manage himself. (Pl.'s Br. 19-20); *see* 20 C.F.R. §404.1525.

Next, Plaintiff argues that the ALJ failed to "articulate specific and adequate reasons" with regard to why his PTSD claims were not credible. (Pl.'s Br. 20); *see Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).[4] The court disagrees for at least two reasons.

First, it is axiomatic that a claimant bears the burden of proving that his impairments meet a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). As previously mentioned, Plaintiff presented evidence attempting to show that he met both Parts A and B of Listing 12.15. But that evidence does not establish that he had marked limitations in his ability to interact with others and/or to adapt or manage himself. Plaintiff was uncooperative in completing an Adult Function Report; therefore, the ALJ was left with the task of predicating his analysis based on Plaintiff's testimony and available treatment records. (R. 19). While the ALJ did not make *explicit* reference to Listing 12.15, Plaintiff's own testimony and available treatment records establish that it was highly unlikely Plaintiff could meet Part B. Even if Plaintiff's subjective pain testimony were "accepted as true," the ALJ clearly articulated why substantial evidence supports the finding that Plaintiff's impairments did not meet or equal a listed impairment, including Listing 12.15. (R. 18).

Second, and most salient here, Plaintiff is requesting a review of the evidence that is impermissible for this court to engage in. Courts such as this do not "decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner." *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Plaintiff's repeated references to substantial evidence tends to indicate a desire for this court to reweigh the evidence, which extends beyond *de novo* review of the legal standards. (Pl.'s Br. 18-20). By contrast, substantial evidence does tend

---

[4] *Cannon* held that "[f]ailure to articulate the reasons for discrediting subjective pain testimony, mandates that the testimony, as a matter of law, be accepted as true." *Cannon*, 858 F.2d at 1545.

to indicate that the ALJ's findings were supported by substantial evidence. While Plaintiff

responds that "substantial evidence supports a finding that these impairments are severe,"

substantial evidence *also* supports the finding that they are *not* severe according to the Listings.

      **b.**      **The ALJ Properly Evaluated the Opinion Evidence and 100% VA Disability Determination**

     Plaintiff also argues that the ALJ committed reversible error in failing to properly evaluate

the opinion evidence and 100% VA disability determination. Plaintiff begins by arguing that,

although not to be assigned "controlling weight," the ALJ must justify assigning "little weight" to

his VA disability rating. (Pl.'s Br. 21-22). Plaintiff argues that if the ALJ does not conduct this

analysis, the Commissioner's decision is due to be reversed and remanded for appropriate

evaluation and weighing. (Pl.'s Br. 22); *see Williams v. Barnhart*, 180 F. App'x 902 (11th Cir.

2006). Plaintiff continues to assert that the ALJ did not afford proper weight to other medical

source statements in the record, such as from Latoia Linebarger, Plaintiff's counselor (Pl.'s Br.

23), and that the ALJ did not appropriately consider the number of factors in affording weight to

Ms. Linebarger's opinions. *See id.*; 20 C.F.R. 416.927(c).

     Under the Social Security Administration's own regulations, a decision by any other

government agency, such as the VA, regarding a claimant's disabled status "is based on [that

agency's] rules" and "is not binding on [the Commissioner] and is not [the Commissioner's]

decision about whether [a claimant] is disabled under [Social Security] rules." 20 C.F.R. §

404.1504. As the Eleventh Circuit has noted, for claims filed before March 2017: (1) an ALJ's

decision must show that he considered the other agency's decision; and (2) substantial evidence

must support the ALJ's decision to depart from the other agency's decision. *Noble v. Comm'r of

Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020). Plaintiff argues that the ALJ is required to outline

and explain how the VA claim differs from the claimed SSA disability. *Beshia v. Comm'r of Soc. Sec.*, 328 F. Supp. 3d 1341, 1347 (M.D. Fla. 2018).

While *Beshia* is a Middle District of Florida decision (and therefore is not controlling), the ALJ's determination is not inconsistent with that court's analysis. The ALJ explicitly noted that the disability determinations of other governmental agencies are not entitled to any particular weight in determining disability for Social Security purposes under Social Security Ruling 06-3p. (R. 25). In addition to this correct observation, the ALJ noted that the findings by the VA were "not based on Agency policy or definitions of disability" and therefore were "neither probative nor persuasive." (*Id.*). The Eleventh Circuit has noted that the standard relied upon to be found disabled under the Social Security Act is more stringent those used under VA rules. *Pearson v. Astrue*, 271 F. App'x 979, 981 (11th Cir. 2008). Indeed, Plaintiff has offered no evidence or argument that the VA's standard for disability was in any way equivalent or similar to the requirements of the Social Security Act. (Pl.'s Br. 20-23). Moreover, the VA's determination appears to have been rendered before September 2014. (R. 1548-49). Subsequent to that time period, medical records tend to indicate an improvement in Plaintiff's condition, such as the mental status exam findings from 2016 and 2018. (R. 20, 22-23, 435, 444, 870, 889, 1173, 1203, 1209, 1218, 1476, 1571-72, 1575-76, 1596, 1606-07, 1625, 1633). When Plaintiff's daily activities are factored in, which are more recent, there appears to be substantial evidence to support the finding that Plaintiff did not show disabling mental or physical limitations. (R. 18, 23-24, 461, 903-05, 917, 926, 928, 870, 889, 1037-38, 1041, 1050, 1607, 1150, 1224, 1492, 1522, 1532).

The ALJ similarly found the July 2018 letter to the VA from Latoia Linebarger, a social worker, was neither probative nor persuasive. (R. 25). Ms. Linebarger is not considered an acceptable medical source. 20 C.F.R. § 404.1502(a). An ALJ still considers opinions from medical

sources, albeit not acceptable, using the same factors for weighing acceptable medical source opinions, and using factors such as supportability and consistency. 20 C.F.R. § 404.1527(f)(1). And, as the ALJ explained, the letter provided by Ms. Linebarger was not consistent with the overall record, particularly related to Plaintiff's daily activities. (R. 25). *See* 20 C.F.R. § 404.1527(c)(4) (providing that generally greater weight is given to opinions that are consistent with the record as a whole). Contrary to Ms. Linebarger's determinations, Plaintiff was noted in previous exams as alert, oriented, well groomed, well nourished, and that he had congruent mood and affect, normal speech, intact judgment and insight, and organized thoughts. (R. 22-23, 870, 889, 1571-72, 1575-76, 1596, 1606). Further examinations in the record as a whole document normal attitude, euthymic mood, and no thought content impairment. (R. 20, 435, 444, 1173, 1203, 1209, 1218, 1476, 1607, 1625, 1633). In addition, Plaintiff established daily activities, including driving, shopping, going to the gym, and taking care of his children. (R. 23, 43-48, 50, 54, 73-76, 870, 875, 1040-41, 1155, 1605). Specifically to childcare, as of the December 13, 2018 hearing, three of Plaintiff's children were under the age of 18, one was developmentally delayed, and two adult children who lived at home had special needs. (R. 43-45).

Taken as a whole, the VA disability determination, as well as Ms. Linebarger's letter, was explicitly considered and discussed by the ALJ. The ALJ's finding that this information was not persuasive is supported by the record and the ALJ's decision not to afford significant weight to Ms. Linebarger's opinion and the VA disability determination is supported by substantial evidence. (*Id.*). The court cannot say that the ALJ simply substituted his own opinion for that of Ms. Linebarger or any other source, but simply engaged in the proper role of weighing the evidence and determining Plaintiff's RFC. 20 C.F.R. § 404.1527.

## VI.    Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 1, 2021.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE